**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAGNUM HUNTER RESOURCES COPORATION, *et al.*,[1] | Case No. 15-12533 (KG) |
| Debtors. | Jointly Administered |
| SAMSON RESOURCES COMPANY, | |
| Plaintiffs, | |
| vs. | Adversary Proceeding No. 16- |
| BAKKEN HUNTER, LLC, | |
| Defendant. | |

## ADVERSARY COMPLAINT FOR DECLARATORY RELIEF

In accordance with the terms of the Confirmation Order (defined below), Samson Resources Company ("Samson") brings this Complaint for Declaratory Relief against Bakken Hunter, LLC, Defendant and Debtor in the above-captioned jointly administered chapter 11 cases ("Bakken Hunter"). As grounds for its Complaint, Samson states the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Magnum Hunter Resources Corporation (9278); -Alpha Hunter Drilling, LLC (7505); Bakken Hunter Canada, Inc. (7777); Bakken Hunter, LLC (3862); Energy Hunter Securities, Inc. (9725); Hunter Aviation, LLC (8600); Hunter Real Estate, LLC (8073); Magnum Hunter Marketing, LLC (2527); Magnum Hunter Production, Inc. (7062); Magnum Hunter Resources GP, LLC (5887); Magnum Hunter Resources, LP (5958); Magnum Hunter Services, LLC (5725); NGAS Gathering, LLC (2054); NGAS Hunter, LLC (3737); PRC Williston LLC (1736); Shale Hunter, LLC (1952); Triad Holdings, LLC (8947); Triad Hunter, LLC (5830); Viking International Resources Co., Inc. (0097); and Williston Hunter ND, LLC (3798). The location of the Debtors' service address is: 909 Lake Carolyn Parkway, Suite 600, Irving, Texas 75039.

## NATURE OF THE ACTION AND PRELIMINARY STATEMENT

1. Samson seeks a declaration from this Court finding that under applicable law and the parties' Model Form Operating Agreement dated January 1, 2010, as amended (the "JOA"), Samson is entitled to offset and recoup any and all production proceeds due to Bakken Hunter against monthly amounts due from Bakken Hunter to Samson for Bakken Hunter's pro rata share of the operating expenses incurred both pre-petition and post-petition. A true and correct copy of the JOA is attached hereto as Exhibit A.

2. On April 14, 2016, Magnum Hunter Resources Corporation ("Magnum") and certain of its affiliates – including Bakken Hunter, together with Magnum and its affiliated debtors, the "Debtors") filed the *Third Amended Joint Chapter 11 Plan of Reorganization (as Modified) of Magnum Hunter Resources Corporation and its Debtor Affiliates* [Docket No. 1138] (the "Plan").

3. The relief requested herein was authorized in the *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization (as Modified) of Magnum Hunter Resources Corporation and its Debtor Affiliates* [Docket No. 1175] (the "Confirmation Order"), which confirmed the Plan.

4. The Confirmation Order provides the following reservation of rights with regard to the parties respective rights (the "Plan Reservation"):

> [N]otwithstanding anything to the contrary in the Plan, any Plan Supplement and any Confirmation Order, the Plan and any Confirmation Order shall not alter or modify the Parties' respective statutory, common law and contractual rights with respect to: (x) the JOA; (y) the Samson Claims, Samson's Liens, the Bakken Claims, and all other claims under the JOA or otherwise that currently exist or that may arise in the future; and (z) the Samson Liens shall not be subordinated or "primed" by any other liens of any party.

Confirmation Order [Docket No. 1175], ¶ 148 s.viii. at p. 78.

5.       Samson's Offset Rights, which expressly included the right to engage in recoupment (hereinafter, the "Recoupment Rights") were expressly preserved by the terms of the Confirmation Order as follows:

> Preservation of "Offset Rights" (defined below) under JOA, the Samson Liens and Applicable Law.  Except as otherwise provided in this Stipulation, Samson shall reserve and preserve its right to engage in offsets and recoupment (if any) under the JOA, the Samson Liens and applicable law of all revenue, money, property and proceeds due Bakken under the JOA and applicable law against any debt owing to Samson by Bakken under the JOA (collectively, the "Offset Rights"), and Bakken reserves and preserves all defenses and claims with respect to the Offset Rights, including (subject, however, to paragraph 10 hereof) the right to contest the amount of any debt, if any, it owes to Samson.

*Id.*, ¶ 148 s.iii at pp. 74-75.

6.       The process for determination of Samson's Recoupment Rights was also expressly set forth in the Confirmation Order as follows:

> Expedited Determination of Offset Rights.  The Parties shall endeavor to resolve the issues regarding Samson's asserted Offset Rights.  If the Offset Rights cannot be amicably resolved within ten (10) days of the Effective Date of the Plan, then within twenty (20) days of the Effective Date of the Plan, Samson shall file a declaratory judgment action with the Bankruptcy Court seeking a judicial determination on an expedited basis solely of Samson's Offset Rights and Bakken's rights and defenses in connection therewith (the "Declaratory Judgment Action"), and the Parties' respective rights with respect to the Escrowed Amounts.  Bakken reserves the right to answer and otherwise respond to the Declaratory Judgment Action; provided however, that Bakken may not seek any relief other than legal determination of Samson's Offset Rights and Bakken's rights and defenses in connection therewith.  The Parties expressly agree and acknowledge that the factual issue of the amount owed to Samson by Bakken or, alternatively, to Bakken by Samson, will not be raised as part of the Declaratory Judgment Action and the exclusive procedure for determining amounts owed to either Samson or Bakken under the JOA is through the provisions of the JOA.  Upon the Bankruptcy Court's determination of the Declaratory Judgment Action, the Escrowed Amounts shall be released to either Samson or Bakken as the Bankruptcy Court may determine (the "Court Determination") unless otherwise jointly agreed by the Parties in writing.  Samson's agreement to cease exercising its asserted Offset Rights shall remain in effect until the Court Determination; so long as from and after the Effective Date of the Plan Bakken is not in default under the JOA or the Plan (including the current payments of JIBs) and such default is not a result of Samson's failure to comply with the terms and provisions

of the JOA. The Parties shall cooperate in seeking to expedite the Court Determination.

*Id*., ¶ 148 s.vii. at pp. 76-77.

7.     The parties' attempted to resolve Samson's Recoupment Rights within ten (10) days of the Effective Date of the Plan as set forth in the Confirmation Order but failed despite their best efforts. Accordingly, Samson brings this Complaint seeking a declaratory judgment confirming the validity of its Recoupment Rights.

### JURISDICTION AND VENUE

8.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157, 1334 and 2201 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Samson confirms its consent, pursuant to rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this adversary complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.     Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

### PARTIES

10.     Samson is a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business at 2 West 2nd Street, Suite 1500, Tulsa, Oklahoma 74103. Samson, along with certain of its affiliates, each filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 15-11942 (CSS).

11.     Bakken Hunter is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 909 Lake Carolyn Parkway, Suite 600, Irving, Texas 75039.

12.     On December 15, 2015 (the "Petition Date"), the Debtors, including Bakken Hunter, commenced their chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  On April 18, 2016, the Court entered the Confirmation Order confirming the Debtors' Plan.

## FACTUAL ALLEGATIONS

13.     The Debtors are independent gas companies focused on the acquisition, production, exploration, and development of onshore North American natural gas resources located primarily in the Marcellus Shale and Utica Shale regions of the Appalachian Basin.  The Debtors also own oil and gas interests in the Bakken Shale region of the Williston Basin in North Dakota.

14.     Samson currently operates approximately 122 oil and gas wells (the "North Dakota Wells") in which Bakken Hunter owns a working interest.  As operator, Samson incurred significant expense when it drilled and operated the North Dakota Wells and continues to incur such expense in the daily operation of the North Dakota Wells.

15.     Prior to the Petition Date, Samson and Baytex Energy USA Ltd. and Nuloch America Corp. entered into the JOA.  Bakken Hunter is the successor in interest to Baytex Energy USA Ltd. and Nuloch America Corp. under the JOA.  The JOA governs the overall

relationship between Samson and Bakken Hunter and, most importantly, it governs the operations of each and every one of the North Dakota Wells.

16. Samson is the designated operator under the JOA and Bakken Hunter is the non-operator. Bakken Hunter owns a significant non-operated interest in the North Dakota Wells with an average working interest of approximately 36.98%.

17. Bakken Hunter, as non-operator, is obligated to pay its pro rata share of expenses of the operations and capital expenditures reflected in joint interest billings sent by Samson to Bakken Hunter (the "Monthly JIBs" or "Monthly JIB"). In turn, Samson is to remit revenue payments for production equivalent to Bakken Hunter's pro rata share (the "Production Proceeds").

18. From December, 2013 to the confirmation hearing on April 18, 2016 with respect to the Plan, Bakken Hunter failed to pay all or any part of its Monthly JIBs owed to Samson. Instead of Bakken Hunter using its own cash flow to pay the Monthly JIBs, Bakken Hunter solely relied upon Samson's Recoupment Rights for the 'payment' of Bakken Hunter's pro-rata share of expenses under the JOA. Accordingly, each month Samson would recoup amounts Bakken Hunter owed to Samson (starting with the oldest balances first) from the production proceeds Bakken Hunter would have otherwise been entitled to had it been paying its Monthly JIBs as required by the JOA.

19. This arrangement was adequate as long as Bakken Hunter's pro rata share of revenues generated from the North Dakota Wells were approximately equal to the amount of the Monthly JIBs. However, when oil and gas prices collapsed in late 2014 at the same time significant capital costs of drilling came due for certain new wells (wells in which Bakken Hunter affirmatively elected in writing to participate under the JOA), Bakken Hunter's pro rata

share of revenues generated from the North Dakota Wells was inadequate to meet the expenses under Bakken Hunter's Monthly JIBs; hence the accumulated amount of the prepetition Samson Secured Claim (defined below) of approximately $13.9 million.

20. After the Petition Date and through confirmation of the Plan, Bakken Hunter's habitual nonpayment of its Monthly JIBs to Samson continued. Samson likewise continued its lawful recoupment and continued to apply Production Proceeds to the oldest open Monthly JIB balances. Accordingly, the post-Petition Date Monthly JIBs for December, January, and February remain wholly unpaid; resulting in the accumulated amount of the post-petition Samson Administrative Claim (defined below) of approximately $2.9 million.

21. Samson was a secured creditor of the Bakken Hunter bankruptcy estate and remains a secured creditor of Bakken Hunter. The terms of the JOA and applicable law provide Samson with a lien and security interest in all of Bakken Hunter's right, title and interest in the oil and gas properties covered by the JOA, as well as extracted production and Production Proceeds therefrom.

22. On February 17, 2010, in order to perfect its lien and security interest granted in the JOA and applicable law, Samson filed a Memorandum of Operating Agreement in the Office of the County Recorder, Divide County, North Dakota. A subsequent Memorandum was filed May 29, 2015, in the Office of the County Recorder, Divide County, North Dakota to identify Bakken Hunter as the non-operator successor to the previous parties to the JOA (the memorandum, as supplemented, the "Operator's Lien"). Samson also filed a UCC-1 Financing Statement on May 29, 2015 (the "UCC Lien"). Additionally, fifty-seven (57) North Dakota statutory oil and gas liens under N.D.C.C. § 35-24-01, *et seq*. and N.D.C.C. § 38-08-01, *et seq*. have been filed by Samson against the interests of Bakken Hunter for the unpaid Monthly JIBs

(collectively, the "North Dakota Statutory Liens") as well as a Notice by Samson Resources Company Pursuant to 11 U.S.C. §546(b)(2) [Docket No. 631] (all of the above collectively, the "Samson Liens").  Notably, the Samson Liens were preserved by the Confirmation Order.  *See* supra ¶ 4.

23. On February 11, 2016, Samson timely filed a secured proof of claim No. 675 in the amount of $13,909,543.33 plus continuing interest, costs, fees and attorneys' fees and expenses (the "Samson Secured Claim").  Samson was, as of the Petition Date, and remains today a fully secured (and oversecured) creditor with liens and security interests against the property interests of Bakken Hunter that are the subject matter of the JOA and underlying oil and gas leases and rights.

24. On March 21, 2016, Samson timely filed administrative claim No. 2218 in the amount of $2,914,128.26 plus continuing interests, costs, fees and attorneys' fees and expenses (the "Samson Administrative Claim") for the post-Petition Date unpaid Monthly JIBs due for Bakken Hunter's proportionate share of the expenses of Samson's operation of the North Dakota Wells under the JOA through February 29, 2016 (the Samson Secured Claim and Samson Administrative Claim are collectively referred to as, the "Samson Claim").

25. The JOA was identified as an executory contract of Bakken Hunter that was assumed by Bakken Hunter under the Plan.  *See* Confirmation Order [Docket No. 1175], ¶ 8.ii at p. 74.  As a result, Bakken Hunter assumed the JOA "*cum onere*," or "with the burden" of all of the obligations under the contract, as well as its benefits.  *See In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007); *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951).  Moreover, the Plan Reservation preserved any and all rights of Samson thereunder, notwithstanding anything in the Plan or Confirmation Order to the contrary.

26.   In its capacity as operator, Samson continues to operate and maintain the North Dakota Wells and incur and meet all daily obligations and expenditures necessary for the operation of the North Dakota Wells under the JOA on Bakken Hunter's behalf.  Likewise, Samson continues to sell the production from the North Dakota Wells on behalf of and for the benefit of Bakken Hunter (and other working interest owners).

27.   As has been done historically, Monthly JIBs are made available to Bakken Hunter (and a majority of working interest owners) through an electronic service called EnergyLink. Bakken Hunter's payments are due within thirty (30) days of receipt of the Monthly JIB.  The JOA only permits Bakken Hunter to unilaterally reduce its payment of its Monthly JIB by any amount of the Monthly JIB that it disputes if, and only if, it pays the undisputed amount of the Monthly JIB and at the time of payment of the undisputed amounts for such Monthly JIB, Bakken Hunter furnishes documentation and explanation demonstrating that the disputed amounts fall into one of four material categories: (1) the non-operator is billed at an incorrect working interest; (2) the non-operator is billed for a project requiring approval and for which approval has not been given; (3) the non-operator is billed for a property in which the non-operator no longer owns an interest; and (4) certain charges over two (2) years old.  *See* Article 1(3)(B) of the Accounting Procedures attached as Exhibit C to the JOA (the "COPAS Procedures").

28.   The Confirmation Order provides that beginning on the effective date of the Plan, Samson must cease recouping Bakken Hunter's revenue and begin remitting same to Bakken Hunter up to the "Prior Month's Reimbursement" so long as Bakken Hunter is not in default of its obligation to pay Monthly JIBs.  "Prior Month's Reimbursement" is defined as the Monthly

JIB amount paid by Bakken Hunter in the previous month plus any amounts for which Bakken Hunter properly reduced payment in accordance Article I(3)(B) of the COPAS Procedures.

29. The Confirmation Order further provides that all revenue in excess of the "Prior Month's Reimbursement", if any, must be placed in an escrow account subject to Samson's Liens and Bakken Hunter's and Samson's respective rights under the JOA, including Samson's Recoupment Rights (the "Escrowed Amount"). Finally, the Confirmation Order provides that if the Court makes a determination that Samson has valid Recoupment Rights under the JOA and applicable law, then Samson's agreement to cease exercise of its Recoupment Right expires, and the Escrow Amounts will be released to Samson.

30. On April 30, 2016,[2] after confirmation of the Plan, Bakken Hunter made a Monthly JIB payment to Samson in accordance with the Confirmation Order and the JOA. As of May 26, 2016, after all authorized and applicable offsets and credits, the amount of the Samson Claim subject to Samson's Recoupment Rights is approximately $12,455,606.78.[3] Notably, the amount owed (or not owed) is not at issue and Samson does not seek a determination or validation of the amount from this Court — as the parties have agreed in the Confirmation Order that such determination shall only be made through the provisions of the JOA. Confirmation Order [Docket No. 1175], ¶ 148 s.vii at pp. 76-77.

31. The Escrow Amount currently is $0.00, because since the date of the Confirmation Order and through the date hereof, there has been no revenue generated in excess of the Prior Month's Reimbursement.

---

[2] This payment was supplemented on May 3, 2016 to equal the full amount of Bakken Hunter's Monthly JIB for the month of March.

[3] This amount includes the Samson Claim reduced by recoupment that occurred prior to the date by which Samson was obligated to cease recoupment under the Confirmation Order, plus seven percent (7%) interest in accordance with the Confirmation Order.

32. As a consequence of the provisions of the Confirmation Order, the continued exercise of Recoupment Rights (and not the actual amount of the Samson Claims, which will be determined consistent with the JOA), is presented herein for determination.

## **CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a))**

33. All allegations above are incorporated herein by reference.

34. The doctrine of recoupment is a remedy that allows the offset of mutual debts when the respective obligations originate from the same transaction or occurrence. *In re Communication Dynamics, Inc.*, 300 B.R. 220, 225-26 (Bankr. D. Del. 2003), *citing In re Telephone Warehouse, Inc.*, 259 B.R. 64, 67 (Bankr. Del. 2001). Recoupment is defined as "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Id., quoting University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992), *citing* 4 *Collier on Bankruptcy* § 553.03, at 553-15-17 (Lawrence P. King Ed., 15th ed.1992)). As stated by the Third Circuit Court of Appeals:

> The doctrine is justified on the grounds that 'where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable. … Thus, so long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code section 553.

*University Med. Ctr.*, 973 F.2d at 1079-80, *quoting Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984); *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990).

35. Additionally, "[t]he simple 'fact that the same two parties are involved, and that a similar subject matter gave rise to both claims ... does not mean that the two arose from the 'same transaction.'" *University Med. Ctr.*, 973 F.2d at 1081, *quoting Lee v. Schweiker*, 739 F.2d

at 875). "Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.*[4]

36.     The doctrine of recoupment, as set forth above, applies here to permit Samson to exercise its Recoupment Rights to recoup and offset both pre- and post-petition amounts that Bakken Hunter owes to Samson under the JOA and the Monthly JIBs for its pro rata share of expenses to operate the North Dakota Wells against the amounts that Samson owes to Bakken Hunter for its pro rata share of the Production Proceeds from the production of the North Dakota Wells.  Both debts arise out of a single integrated transaction and contract, the JOA, which governs the obligations of the parties with respect to the drilling, completion and operation of the North Dakota Wells and the rights of the parties in receiving Production Proceeds generated by the Wells. *See In re Buttes Gas and Oil*, 72 B.R. 236, 238 (Bankr. S.D. Tex. 1987) (holding that an operator of an oil and gas well was entitled to recoup the proceeds generated from the well due to the working interest owner for the owner's failure to pay operating expenses under the parties' operating agreement, and stating that the operator's claim "arises out of a single contract, the Operating Agreement, and a recurring transaction, the transfer of net funds from [the operator] to Debtor").

37.     In addition to applicable non-bankruptcy law, Samson's Recoupment Rights are also provided for under Articles VII B. and XV G. of the JOA and were contractually agreed to by the predecessor of Bakken Hunter.  These provisions specifically provide that Samson (as the operator of the North Dakota Wells) is entitled to recoup and/or offset amounts due from Bakken

---

[4]     The JOA provides that North Dakota law governs the parties' rights and obligations under the JOA.  North Dakota common law recognizes recoupment rights when the parties' respective rights and obligations arise out of the same transaction or occurrence. *E.g.*, *Minex Resources, Inc. v. Moreland*, 467 N.W. 691 (N.D. 1991).  North Dakota statutory law is likewise in accord with respect to transactions arising in oil and gas transactions. *E.g.*, N.D.C.C. §38-08-8 and §38-08-10.

Hunter for its failure to timely pay its share of the expenses against revenue otherwise payable to Bakken Hunter. Pursuant to the Plan Reservation, Samson's Recoupment Rights were not affected by the Plan or Confirmation Order and remain viable today.

38. It would be wholly inequitable to allow Bakken Hunter to enjoy the benefits of the North Dakota Wells and the revenue they generate without paying its fair share of the cost to operate the Wells, which generates the production. Moreover, a finding that Samson is not permitted to exercise its Recoupment Rights is contrary to the bargained for terms of the JOA and Samson's rights thereunder, and it would also be inequitable to prevent Samson from exercising this bargained for contractual right under a contract assumed by Bakken Hunter.

39. For the foregoing reasons, and consistent with the terms of the Confirmation Order, Samson seeks and is entitled to a judicial declaration that it may exercise its Recoupment Rights, as set forth in the JOA and applicable non-bankruptcy law, in the same or similar manner as it has previously exercised said rights in reduction of the Samson Claim prior to the Debtors' bankruptcy filing. Additionally, pursuant to the terms of the JOA Samson is further entitled to an award of its costs and attorneys' fees incurred in prosecuting its claim for relief herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Samson respectfully requests that the Court enter judgment in its favor as follows:

A. Declaring and determining that Samson has valid and proper Recoupment Rights, that said Recoupment Rights are not subject to any applicable rights and defenses of Bakken Hunter and that Samson may exercise such Recoupment Rights in accordance with the JOA and applicable non-bankruptcy law;

  B. Awarding Samson its costs and attorneys' fees incurred in prosecuting its claim for relief herein as provided for under the JOA; and

  C. Granting Samson such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated:  May 26, 2016<br>Wilmington, Delaware |  /s/ Domenic E. Pacitti<br>Domenic E. Pacitti, Esq. (DE Bar No. 3989)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone: (302) 426-1189<br>Facsimile: (302) 426-9193<br><br>-and -<br><br>Morton Branzburg (admitted *pro hac vice*)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>1835 Market Street, Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Telephone: (215) 569-2700<br>Facsimile: (215) 568-6603<br><br>-and-<br><br>Steven W. Soulé (admitted *pro hac vice*)<br>John T. Richer (admitted *pro hac vice*)<br>**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**<br>320 South Boston Avenue, Suite 200<br>Tulsa, Oklahoma  74103-3706<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br><br>*Attorneys for Samson Resources Company* |